**Joseph T. ALLEN**

v.

**The UNITED STATES.**

**No. 355–76.**

United States Court of Claims.

Feb. 22, 1978.

Mark D. Roth, Washington, D. C., attorney of record for plaintiff; L. M. Pellerzi, Washington, D. C., of counsel.

Stephen G. Anderson, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before COWEN, Senior Judge, and NICHOLS and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge:

This civilian pay case is before the court on cross-motions for summary judgment. Plaintiff, who served from 1956 through 1974 as a production controller technician in the Texas Air National Guard, is seeking disability retirement benefits, after being terminated because physically unfit for world-wide service in the military.

The controversy over plaintiff's eligibility to receive federal civilian disability benefits arises out of the peculiar nature of the technician position. Technicians like plaintiff are full-time employees of the National Guard who, under the National Guard Technicians Act of 1968, 32 U.S.C. § 709, are required concurrently to be members of the National Guard. As such, technicians must meet all the mental and physical standards, as well as professional qualifications, prescribed by the military departments. See H.Rep.No.1823, 90th Cong., 2d Sess. (1968), *reprinted in* 3 U.S.Code Cong. & Admin.News, pp. 3318, 3319 (1968). The House Report described the technician program as follows:

[T]echnicians will serve concurrently in three different ways: (a) Perform full-

time civilian work in their units; (b) perform military training and duty in their units; and (c) be available to enter active Federal service at any time their units are called.

These dual status technicians are also subject to the terms of 32 U.S.C. § 709(e)(1), which provides:

(e) Notwithstanding any other provision of law * * *

(1) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned;

In his civilian employment as a production controller, plaintiff's duties involved maintenance of aircraft, missiles, and support equipment owned by the National Guard or assigned to it by the United States Air Force. Plaintiff held the rank of Chief Master Sergeant in the National Guard, was part of the chain of command in his unit, subject to military discipline, and required to be physically fit to go into combat and to accompany his unit anywhere it might be called.

Plaintiff has an insulin-dependent, uncontrolled diabetes mellitus condition which requires him to maintain a strict diet and schedule. This condition has existed for over twenty years, and his been treated by plaintiff's private physician, Dr. Monte. In September of 1974, after Dr. Monte, at plaintiff's request, sent a letter of certification of health mentioning plaintiff's condition, Allen was examined by Dr. Frank A. Lang, a Texas Air National Guard physician. Dr. Lang confirmed the diagnosis of diabetes mellitus and advised Allen that he no longer qualified for world-wide and general military service because he would not be able to adhere to a strict schedule and diet while traveling abroad. It might be noted that in any event diabetes mellitus is a medical condition which disqualifies individuals for service under Air Force Regulation AFM 1–60–1C.

In a letter received on November 29, 1974, plaintiff was formally notified that his loss of membership in the Texas Air National Guard would be effective as of November 30, 1974. He was also advised that pursuant to 32 U.S.C. § 709(e)(1) his employment as a National Guard technician would be terminated no earlier than 30 days after the date of receipt of the letter. In addition, plaintiff was informed in this letter that he had the option of applying for a disability retirement annuity under 5 U.S.C. § 8331(1), or, alternatively, for a discontinued service annuity under 5 U.S.C. § 8336(d).

Plaintiff elected to apply for a disability annuity, under the Federal Retirement Program, 5 U.S.C. §§ 8331(1)(A) and 2105, and, on December 3, 1974, filed a claim with the Bureau of Retirement, Insurance and Occupational Health (BRIOH), of the United States Civil Service Commission. In support of his application, plaintiff submitted a Physician's Statement completed by Dr. Monte, who indicated his belief that plaintiff was disabled for his former position of production controller. In addition to diabetes mellitus, Dr. Monte also diagnosed Type II hyperdipoproteinemia, early macular degeneration and early diabetic retinapathy, osteoarthritis of spine and shoulder, and reflex esophagitis. Dr. Monte further found that plaintiff experienced great difficulty in maintaining his schedule when traveling abroad.

BRIOH also had before it a Supervisor's Statement completed by Harold H. Ponder, who noted that plaintiff was fully capable of performing all of his civilian duties as defined by the job description for production controller.

In a decision dated January 8, 1975, BRIOH denied plaintiff's claim because "the evidence failed to establish a disability severe enough to prevent useful, efficient and safe performance of the essential duties of the position from which appellant was seeking retirement." Plaintiff's notice of disallowance was dated January 14, 1975.

He appealed to the Dallas Field Office of the Federal Employees Appeal Authority (FEAA), on January 21, 1975.

The FEAA held a hearing on April 7, 1975, at which testimony was offered by three witnesses: plaintiff, Colonel Ponder, and Sergeant Houston Landry, also a production controller. Plaintiff testified that his civilian and military positions were substantially similar, if not totally identical, and that he had great difficulty maintaining his diet and schedule while abroad. Plaintiff also stated that world-wide travel, as part of both civilian and military duties, came up approximately every 12 weeks. The other two witnesses both testified that the civilian and military aspects of the technician job were identical.

On May 20, 1975, the FEAA issued an opinion affirming the BRIOH determination that plaintiff was not severely enough disabled to prevent efficient performance of his civilian duties. The FEAA concluded that on the basis of the evidence before it, plaintiff was not totally disabled within the meaning of the relevant retirement statute and regulations.

Plaintiff was placed on leave without pay status on December 30, 1974, pending resolution of his claim for disability retirement pay. On May 24, 1975, plaintiff was finally separated from his civilian position.

Thereafter, plaintiff applied for a discontinued service annuity. His claim was allowed retroactive to the date his employment with the Guard was terminated, and he has received about $428 per month since May 24, 1975. On August 26, 1976, plaintiff filed a petition in this court seeking both prospective relief and the accumulated difference between the disability annuity and the discontinued service annuity.

The question before the court is whether, under the relevant Civil Service statutes, 5 U.S.C. §§ 8331(6), 8337, and the National Guard Technicians Act, *supra*, plaintiff is entitled to a disability retirement annuity notwithstanding the contrary determination of the Civil Service Commission.

Section 8331(6) defines "disabled" and "disability" as follows:

"disabled" and "disability" mean totally disabled or total disability, respectively, for useful and efficient service in the grade or class of position last occupied by the employee or Member because of disease or injury not due to vicious habits, intemperance, or willful misconduct on his part within 5 years before becoming so disabled;

Section 8337 provides:

(a) An employee who completes 5 years of civilian service and is found by the Civil Service Commission to have become disabled shall be retired on his own application or on application by his agency. * * * An annuity authorized by this section is computed under section 8339 [Computation of annuity] of this title.

As we have already stated, the Civil Service Commission, or, more specifically, BRIOH and FEAA, determined that plaintiff was not "totally disabled" for purposes of his civilian employment.

The scope of review of the Commission's disability determinations is narrow. Although section 8347 of 5 U.S.C. provides that decisions of the Civil Service Commission regarding questions of disability are "final and conclusive and are not subject to review," this court has construed this to mean not that the Commission's disability determinations are sacrosanct, but rather that they cannot be disturbed unless "there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.' " *Gaines v. United States*, 158 Ct.Cl. 497, 502, *cert. denied*, 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962). *See, e. g., McFarland v. United States*, 517 F.2d 938, 942–43, 207 Ct.Cl. 38, 46–47 (1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *Scroggins v. United States*, 397 F.2d 295, 297, 184 Ct.Cl. 530, 533–34, *cert. denied*, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968); *McGlasson v. United States*, 397 F.2d 303, 307, 184 Ct.Cl. 542, 549 (1968). We find that in denying plaintiff's claim, the Com-

mission failed to take into account the effect of the National Guard Technicians Act of 1968. We therefore set aside its findings.

■ From the record it appears that little or no consideration was given by either BRIOH or the FEAA to the dual status nature of the technician job. Perhaps a brief discussion of the 1968 Act, and its legislative history would clarify the proper characterization of this job. The 1968 Act made contemporaneous membership in the National Guard a condition of employment as a technician. 32 U.S.C. § 709(b). Moreover, any technician who is separated from the National Guard for any reason must be promptly removed from his or her employment altogether. 32 U.S.C. § 709(e)(1). The dominant purpose of the Act, however, was to bring technicians under the umbrella of the federal retirement and fringe benefit programs. This was to promote national uniformity in such benefits among technicians, who previously had been covered by a variety of state programs. Technicians are now covered under the Civil Service system, rather than by state or alternatively, career military programs.

■ The legislative history accompanying the Act indicates that Congress contemplated that the single technician position would entail a composite of inseparable, simultaneous military and civilian duties. See H.Rep.No.1823, 90th Cong., 2d Sess. (1968), U.S.Code Cong. & Admin.News 1968, p. 3318. This interpretation of Congressional intent is amply supported by the statutory requirement that any technician failing to retain National Guard enrollment be completely severed from his job. Under the Act, the civilian duties cannot stand alone to comprise a job distinct from the military activities. Section 709(e)(1). See also Tennessee v. Dunlap, 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976); Chaudoin v. Atkinson, 494 F.2d 1323 (3d Cir. 1974). As a result of this dual qualification aspect, technicians, although by statute eligible only for civil service retirement benefits, may be forced to retire either by military authorities, or by supervisors of their civil-

ian duties. The continued employment of technicians is subject not only to civil service requirements, but also to military regulations. In view of this, we find that the civilian and military duties imposed on plaintiff constitute a single job for purposes of determining disability and resultant retirement benefits.

■ It is here that defendant's arguments must fail. Defendant argues that eligibility for disability retirement is predicated exclusively upon a finding by the Civil Service Commission that plaintiff is totally disabled to perform his civilian duties. Ergo, because plaintiff has not been determined totally disabled for purposes of the civilian aspects of his position, he cannot qualify for a disability annuity under 5 U.S.C. § 8337. In short, defendant takes the position that plaintiff's physical disqualification for military duty disqualifies him for his civilian position by operation of law and not by reason of his "total" physical disability to perform his duties. Again, this ignores the inseparability of the military and civilian aspects of the job. Plaintiff has been involuntarily retired by reason of his physical condition. Moreover, the National Guard's determination of physical disability is by statute within the adjutant general's unreviewable discretion. 32 U.S.C. § 709(e)(5). Here, where the military officials and civilian tribunals have taken somewhat conflicting positions, plaintiff is caught in between, declared ineligible both for employment as a technician and for disability retirement. It would seem only fair that there be a single standard in determining physical fitness for employment as a technician. In light of section 709(e) and settled law respecting reviewability of military determinations, it is preferable that the military standard prevail when there is disagreement. Cf. Mindes v. Seaman, 453 F.2d 197, 199 (5th Cir. 1971) (judicial reluctance to review military decisions); Turner v. Egan, 358 F.Supp. 560 (D.Alas.), aff'd, 414 U.S. 1105, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973) (refusal to review forced retirement from National Guard).

Defendant notes that this court has, in the past, acknowledged that it is possible for a federal employee to be adjudged physically able for disability retirement purposes, and yet too physically unfit to continue to perform the duties of his position. *Piccone v. United States*, 407 F.2d 866, 872, 186 Ct.Cl. 752, 762–63 (1969). *Piccone*, defendant argues, is controlling here. Plaintiff, like Piccone, has been found physically unfit to perform his duties as a technician, but is nevertheless not so disabled as to qualify for disability retirement. If plaintiff's position were purely civilian, and the decision initially to retire him as disabled had been that of the Civil Service Commission, we would not quarrel with defendant's analysis. Again, however, plaintiff, unlike Piccone, was retired because of military action. Defendant overlooks the military aspects of his employment which take this case out of the rule fashioned in *Piccone*.

Finally, defendant asserts that *Chaudoin v. Atkinson, supra,* demonstrates that technicians perform two separate jobs, albeit simultaneously. This, defendant argues, follows because *Chaudoin* held that National Guard officers' attempt to force a technician to perform certain military duties was illegal. In *Chaudoin*, however, the plaintiff was directed to engage in military activities which were unrelated to his primary duties as a technician. This does not mean that the technician position is purely civilian, but simply that technicians are expected only to perform those military duties, which for the most part mesh with civilian duties, which are part of the job description. *See* 494 F.2d at 1331–32.

Defendant's fundamental error is its failure to accord proper weight to the definition in Section 8331(6) defining "disability" as being disability "for useful and efficient service in the grade or class of position last occupied." Defendant persists in thinking about plaintiff's fitness for the duties of a civilian job with no military connection. This is not the position plaintiff last occupied. That was one in which military duties were an inseparable component. If he was unfit for them, he was unfit for the job. The statute does not allow the Commission to deny disability retirement because the retiree is fit for some other job than the one he occupied. Thus the Commission has made a plain error of law, one not supported by the respect we are required to accord and do accord to the Commission's expertise. That respect does not allow it a "misconstruction of the governing legislation" in the phrase from *Gaines v. United States*, quoted *supra*.

In conclusion, we hold that the findings of the FEAA and BRIOH that plaintiff is not totally disabled for purposes of 5 U.S.C. § 8331 are legally erroneous. In light of the National Guard Technicians Act, the Civil Service Commission must defer to the military judgment in this regard. In the judgment of the military, plaintiff is physically disabled for technician employment. Thus, he should be eligible for a disability annuity.

Accordingly, plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied. It is hereby ordered that plaintiff's record with the Civil Service Commission be corrected to show that he has been retired for physical disability since May 24, 1975. Judgment is entered for plaintiff and the cause is remanded to the Trial Division under Rule 131(c) to determine the quantum of recovery.

BENNETT, Judge, dissenting:

I respectfully dissent from the opinion of the court because it has rewritten the statutes applicable to this case, and I believe that it is appropriate only for the Congress to do so.

At first blush one might conclude that without the court's aid plaintiff is in a no-win situation. Because he was found physically unfit to continue as a member of the Texas Air National Guard (ANG), he lost his civilian position as a production controller technician with the Guard. But, the court properly observes that this was mandated by statute. 32 U.S.C. § 709(e)(1). Plaintiff was given and receives a discontinued service annuity under 5 U.S.C.

§ 8336(d). Now plaintiff wants instead a disability retirement annuity under the Federal Retirement Program for civilian employees. The latter annuity was denied by the Civil Service Commission which, after a hearing and appellate review, found that plaintiff suffered from a condition pre-existing his position and that he was not totally disabled. The military had found plaintiff not qualified for general military service and worldwide duty by reason of diabetes. His military responsibilities required occasional foreign travel and this made it difficult for him to adhere to a restricted diet and to maintain insulin regulation. There is nothing to indicate that, except for the foreign travel problem, plaintiff could not or did not perform his duties adequately. Indeed, there is uncontroverted evidence that he could do so and that he was not totally disabled. The Civil Service Commission agreed, in denying his claim, as noted. Is plaintiff entitled to a disability retirement annuity anyway? The court says that he is. It does so by making this conclusion:

> * * * It would seem only fair that there be a single standard in determining physical fitness for employment as a technician. In light of section 709(e) and settled law respecting reviewability of military determinations, it is preferable that the military standard prevail when there is disagreement. * * *

If Congress had wanted this to be the rule, it knew how to say so. But, it did not require that the Civil Service Commission defer to the military judgment by enacting the National Guard Technicians Act, and there is nothing at all in section 709 to support the court's position. Technicians remain under the Civil Service and not military law, so far as retirement rights are concerned. Qualifications for the military position plaintiff held were governed by military requirements. When plaintiff failed to meet those standards, he lost his civilian job by operation of law. This does not, however, entitle plaintiff, by operation of law, to a disability retirement under title 5 of the United States Code. Section 8331(6) says:

> (6) "disabled" and "disability" mean *totally disabled or total disability*, respectively, for useful and efficient service in the grade or class of position last occupied * * * [emphasis supplied].

Another section, 5 U.S.C. § 8347(c), provides:

> (c) *The Commission shall determine questions of disability* and dependency arising under this subchapter. *The decisions* of the Commission concerning these matters *are final and conclusive and are not subject to review.* * * * [emphasis supplied].

The court surmounts the foregoing language by ruling that, in ignoring the dual nature of plaintiff's positions and the National Guard Technicians Act, the Commission made a mistake and its findings simply must be set aside. The court says: "In view of this, we find that the civilian and military duties imposed on plaintiff constitute a single job for purposes of determining disability and resultant retirement benefits." This flies in the face of the law and the facts. Plaintiff has no right to a disability retirement annuity unless he comes within the statutory provisions and their implementing regulations. He does not. The CSC has not found him to be totally disabled from useful and efficient service. Its decision is final. Not even the ANG found that plaintiff was totally disabled for useful and efficient service but only that he was unfit for general worldwide military service.

The court seems to be under a misapprehension that the National Guard Technicians Act somehow changed the responsibility given to the CSC for these decisions under 5 U.S.C. §§ 8331(6), 8337(a), and 8347(c). It did not do so. That Act had the purpose of giving Guard technicians the same retirement benefits as other federal employees. 3 U.S.Code Cong. & Admin. News, p. 3320 (1968). It did not seek to give technicians greater disability benefits than other federal employees. But, the court does so. This is not insignificant, as counsel assured us at oral argument that

approximately 50,000 technicians are potentially affected by this case. The court's syllogism fails because it does not follow that if plaintiff is unfit for general, worldwide military duty he is also "totally disabled" from his civilian position and that the CSC is deprived of the discretion given to it by statute to rule otherwise. Nor is it correct to say that plaintiff's two positions are the same. The duties of a civilian technician are not the same as those of an Air National Guardsman on active duty. Plaintiff was retired from his civilian position, and it is his civilian duties that are relevant to the question of entitlement to civilian disability benefits. The CSC did not abuse its discretion in applying the law, and we thus have no jurisdiction to upset its decision made final by statute. If Congress wishes to prefer these technicians over other civilian government employees and to give the military, instead of the Civil Service Commission, the right to say with finality who is disabled and entitled to a disability annuity, it can rewrite the statutes. The court should refrain from doing so, whatever the appeal of the particular case.