This civilian pay case comes before the court on cross-motions for summary judgment. Plaintiff alleges entitlement to back pay for the year, August 1974 to August 1975, during which he was indefinitely suspended pending the resolution of criminal charges brought against him. Plaintiffs sole contention is that he was denied a hearing in connection with his indefinite suspension. We hold in favor of the Government on the ground of laches.
On July 10, 1974, while employed as Area Director, GS-15, at HUD’s Insuring Office in Tampa, Florida, plaintiff was indicted in the United States District Court for the Middle District of Florida on the charge of unlawfully aiding in the solicitation of campaign funds for U.S. Senator Edward Gurney through the use of HUD loans. By a memorandum dated July 15, 1974, HUD notified plaintiff of *609 its proposal to suspend him indefinitely pending disposition of his indictment. Although the memorandum informed plaintiff of his regulatory right to respond either orally or in writing before the proposed adverse action became effective, he chose not to do so. Shortly thereafter, on August 9, 1974, plaintiff was notified of HUD’s decision to suspend him indefinitely, effective August 13, 1974.
The notice advised plaintiff that he could appeal the decision and was entitled to a hearing if he did appeal. The notice also stated that plaintiff could appeal either to HUD or the Civil Service Commission ("CSC”) (now the Merit Systems Protection Board) ["MSPB”], but that if he chose to appeal first to HUD, he would not be entitled to appeal to the CSC until after a decision by HUD had been rendered. If, however, no decision by HUD had been made within 60 days after it was filed, plaintiff could terminate his appeal to HUD by appealing to CSC. All HUD appeals were to be directed to Thomas G. Cody, the Assistant Secretary for Administration in Washington, D.C., with assistance being available by telephoning a given number.
On August 23,1974, rather than submitting a request for an appeal to HUD’s office in Washington, D.C., plaintiff submitted a letter to E. Lemar Seals, HUD Regional Administrator in Atlanta, Georgia, in which plaintiff allegedly sought to appeal his suspension and request a hearing. Although that appeal letter was ambiguously phrased and sent to the wrong HUD office, we assume arguendo that it did constitute a valid intra-agency appeal to HUD. Thereafter, plaintiff received no response from HUD; however, he made no attempt to pursue his administrative appeal or make inquiry as to its status.
One year later, on August 6, 1975, plaintiff was acquitted of the 1974 criminal charges brought against him. Accordingly, he was immediately reinstated to his former GS-15 position. HUD, however, denied plaintiff back pay for the suspension period, August 13, 1974 to August 6, 1975.
During the next three and one-half years, plaintiff made numerous attempts to pursue his request for back pay by writing to various government officials, the majority of whom were completely divorced from the administrative proceedins relating to plaintiff. Not once did plaintiff ever *610 make any reference to his appeal and request for a hearing letter of August 23, 1974.
Finally, on March 17, 1979, nearly four and one-half years after plaintiff could first have filed with the MSPB, he requested that the MSPB review his case. On May 3, 1979, plaintiffs request was denied as untimely. Similarly, the MSPB’s Office of Appeals Review, by: unanimous decision, affirmed its earlier denial.
Plaintiff filed his petition in this court on August 28, 1979 — after more than five years had elapsed from the time plaintiff first filed his administrative appeal and request for a hearing on August 23, 1974. While the Government raised several grounds in its motion, we have decided the case upon the ground of laches.
The prerequisite for application of laches is a demonstration of unreasonable delay and prejudice to the defendant. Gentry v. United States, 225 Ct.Cl. 654 (1980); Brundage v. United States, 205 Ct.Cl. 502, 504 F.2d 1382 (1974), cert. denied, 421 U.S. 998 (1975). We find that the lengthy delay between the period August 23, 1974 and August 28, 1979, a delay of more than five years, is unreasonable and prejudicial to the Government. Thus, we find the two prerequisites for applying laches are satisfied.
We first begin with the issue of unreasonable delay. Plaintiff lost his job on August 13, 1974. On August 23, 1974, plaintiff commenced his administrative appeal to HUB. He received no response from HUD; nonetheless, he did not bother to make any relevent inquiries concerning the status of his appeal and request for a hearing. lt was not until more than four and one half years later, on March 17, 1979, that plaintiff sought to finalize his administrative appeal by filing with the MSPB. On August 28, 1979, he commenced suit in this court.
In determining whether delay has been unreasonable in civilian pay cases, generally we do not count the time spent pursuing administrative relief. The rationale is that disgruntled civilian employees are required to exhaust their administrative remedies before commencing suit in this court. Cason v. United States ("Cason II"), 200 Ct.Cl. 424, 471 F.2d 1225 (1973). There is sin exception, however, if undue delay in the administrative proceedings has been *611 caused or contributed to by the employee. Under such circumstances, an employee will be charged with the time between the start of the controversy and the final administrative decision. Plant v. United States, 222 Ct.Cl. 682 (1980); Frommhagen v. United States, 216 Ct.Cl. 1, 573 F.2d 52 (1978), cert. denied 440 U.S. 909 (1979). While HUD is not entirely blameless in this whole affair, it is clear that plaintiff unreasonably contributed to the delay in this case.
The notice of indefinite suspension unambiguously set forth all the relevant data necessary for plaintiff expeditiously to pursue his appeal: he was told to whom and where the appeal letter was to be sent; he was told that if no response was received from HUD within 60 days, he could appeal to MSPB; and he was told that if assistance was needed in pursuing his appeal, a certain named individual was to be contacted. As a GS-15 Area Director of a HUD office, plaintiff is assumed to have known the importance of regulatory procedure and follow-through. Not only did plaintiff fail to ascertain the status of his HUD appeal during the pendency of his criminal trial, but in all his communications to various government officials, he never once mentioned the existence of any such appeal until March 7, 1979, when he first wrote to the MSPB. Had plaintiffs interest in pursuing his appeal been genuine, plaintiff could have sought administrative relief before the MSPB 60 days after he sent his August 23, 1974 appeal letter to HUD. Even if the exhaustion of plaintiffs administrative remedies was delayed by HUD’s failure to respond to his appeal letter, we cannot excuse plaintiff for his failure diligently to pursue his administrative remedies. He had in equity a duty to inquire as to the status of his appeal. He failed so to do.[1] Plant v. United States, supra.
Of course, delay alone does not constitute laches. The Government must demonstrate some prejudice for it to prevail.
First, if plaintiff is allowed to recover, the Government will have to pay for services that were never performed, and *612 the benefits of which were never received. This court has held that such prejudice is sufficient for the enforcement of laches. Brundage v. United States, supra at 510.
Next, there is also some indication that the Government’s defense on the merits would be hindered by the untimely prosecution of plaintiffs claim. It would be difficult, if not impossible, to locate witnesses who would be in a position to address the allegations asserted by plaintiff. Similarly, there are various relevent documents which may have been destroyed in good faith due to the passage of time. "The search for the truth is always imperiled with the passage of time. Memories fade and documentary evidence is sometimes lost or destroyed.” Id. at 510.
Finally, plaintiffs allegations challenge the competence and veracity of numerous government officials. It is manifestly unfair to these individuals to require them to explain and justify actions taken several years ago. They are entitled to defend and explain their acts when their recollections are fresh and relevant evidence has not disappeared. Plaintiff tarried more than five years before bringing suit in this court and more than four and one half years before finalizing his administrative appeal — it is too late in the day for a speedy, equitable, and precise determination of the truth. Id.[2]
All of plaintiffs other contentions (with supporting materials) relating to laches, though not directly addressed by this order, have been examined and found to be without merit.
Accordingly, it is therefore ordered, after consideration of the record and parties submissions and after oral argument, that plaintiffs motion for summary judgment is denied, defendant’s cross-motion for summary judgment is granted. The petition is dismissed.

 The court is mindful of those circumstances showing affirmatively that a long delay was excusable or properly justifiable. See Gersten v. United States, 176 Ct.Cl. 633, 364 F.2d 850 (1966), and cases cited in note 3 therein. However, in the instant case, plaintiff has established no extenuating circumstances sufficient to render his claim invulnerable to the defense of laches.

 Moreover, the longer the delay by a plaintiff in filing suit, the less need there is to search for specific prejudice and the greater the shift to plaintiff of the task of demonstrating lack of prejudice. Grisham v. United States, 183 Ct.Cl. 667, 392 F.2d 980, cert. denied, 393 U.S. 843 (1968). In this particular case, plaintiff has introduced no evidence tending to support the conclusion of lack of prejudice.